IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | Case No. 3:2008-cr-00097-MRK |
| | § | |
| VIRTUAL MONEY, INC. | § | |

**BRIEF OF *AMICUS CURIAE ON* BEHALF OF DEFENDANT VIRTUAL MONEY SUBMITTED BY**
**SELECT AGENTS 4 THE RESTORATION OF VMI**

Select Agents 4 the Restoration of VMI [hereinafter "Select Agents"] by and through its attorneys Pattis & Smith, LLC, hereby submits its Brief of *Amicus Curiae*. Express permission for the submission of which was initially granted on May 13, 2010 and extended until August 5th, 2010. Select Agents alleges that the Department of Justice has selectively prosecuted and perpetrated a fraud upon the court by withholding material exculpatory evidence from both the grand jury and the court. The consequence of this conduct is that prosecutors have tainted the entire case, depriving defendant Virtual Money, Inc. [hereinafter "VMI"] of due process of law, and preventing VMI from receiving a fair trial. Consequently, the indictment against VMI should be dismissed. Select Agents submits the following in support of these assertions.[1]

STATEMENT OF INTERESTS AS AMICUS CURIAE

Select Agents is comprised of a group of individuals who contracted with VMI to market the company's debit card. The indictment, issued against VMI, destroyed Select Agent's

---

[1] Select Agents' motion to submit brief of *amicus curiae* with accompanying Appendix and Exhibits are incorporated herein by reference. All footnotes made herein are made to Exhibits submitted with Select Agents' Exhibit C which accompanied a Complaint submitted to Inspector General's office of the Department of Justice in New York, New York, along with Select Agents' request to the Court for permission to submit a Brief of *Amicus Curiae*.

businesses and livelihoods. It is the position of Select Agents that the VMI indictment was the result of untoward influence wielded by the Department of the Treasury's Direct Express® MasterCard© debit card over the Justice Department. Amici believe that the prosecution of VMI is selective, violates equal protection, and was a pretext to eliminate the company as a competitor—transgressions that functioned to vicariously deprive amici of their livelihoods.

## ISSUES PRESENTED

This brief addresses the following questions:

1. Whether the government's ostensible conflict of interest and deliberate withholding of exculpatory evidence, from both the grand jury and the court, warrants dismissal of the indictment against VMI.

2. Whether the Department of Justice's (hereinafter "DOJ") publication of its Reports that relied heavily on Department of the Treasury (hereinafter "Treasury") contributions condemning the use of all debit cards, betrays a conflict of interest in the instant case sufficient to warrant dismissal of the indictment against VMI.

## ARGUMENT

### THE GOVERNMENT WITHHELD EXCULPATORY EVIDENCE FROM THE GRAND JURY AND THE COURT IN ORDER TO INVIDIOUSLY, AND IN BAD FAITH, PROSECUTE VMI

The Treasury considered the VMI Virtual Money® debit card a direct competitor to its Direct Express® MasterCard® debit card.[2] The DOJ was subject to the guidelines outlined in Select Agents Appendix Exhibit C-13 and as amended shown in Appendix Exhibit C-11, governing how a corporation is to be investigated. However, because of its collusion with the Treasury, the DOJ failed or refused to follow the guidelines mandated for its investigation of

---

[2] Select Agents' Appendix Exhibit C-2.

VMI. Ultimately, neither the grand jury nor the court were informed about the Treasury's issuance of its own debit card.

Even though the Treasury's Direct Express® MasterCard® debit card was not launched until June 2008, the plan to launch the card could not have been accomplished overnight. Arrangements with MasterCard® and Comerica Bank in Dallas, Texas had to have been made long before the VMI indictment was obtained. It is not coincidental that the superseding Indictment and the launch of the Treasury's debit card occurred in June 2008. The original Indictment was issued in April 2008, but was placed under seal.

During the period alleged in the indictment, VMI was engaged in the legitimate business of marketing its Virtual Money® debit card in agreement with either Southwest Bank in Dallas, Texas or Arkansas Valley State Bank in Broken Arrow, Oklahoma. VMI was not informed that it was under investigation, either civil or criminal, for violation of federal law prior to the raid on its offices on August 20, 2008. Select Agents alleges that VMI is being subjected to criminal prosecution in order to eliminate its debit card from competition with the Treasury's Direct Express® debit card, and that the DOJ is complicit in this exercise.

Additionally, the government withheld material exculpatory information from the grand jury and, now, from the court. It neglected to inform both the grand jury and the court that it had issued reports on its position regarding the use of debit cards for laundering drug money; that the Treasury contributed information provided in these reports; and that the Treasury was in the process of issuing its own debit card. The government had a significant and substantial interest in obtaining an indictment of VMI in order to eliminate its debit card as competition to the Treasury's debit card.

The government invidiously prosecutes a person when it prosecutes in order to deter the exercise of a legally protected right. *United States v. Andrews*, 633 F.2d 449, 453-55 (6th Cir.1980), *cert. denied*, 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981). Select Agents alleges that when the government chose to indict VMI it a pretext for discouraging the company's right to participate in the debit card market. When the government failed or refused to inform the grand jury, and subsequently the court, that the Treasury was either planning on or had issued its own debit card, it withheld material exculpatory evidence. Had this fact been known to the grand jury, it might not have returned the Indictment against VMI. Now, this should militate in favor of a dismissal of the indictment against VMI.

In *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the court noted that "… knowledge gained by the Government's own wrong cannot be used by it … ." 251 U.S. 385, 392, 40 S.Ct. 183. *See also Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L. Ed. 307 (1939). "The rationale behind these decisions is that to rigidly enforce due process protections we must deny any or all benefits to the government in its prosecution which can be proven to have resulted from the illegal conduct." *United States v. Remington*, 208 F. 2d 567, 569 (2nd Cir.1953).

Implicit in the Fifth Amendment prohibition that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." is the guarantee that a grand jury will be fair and unbiased. *United States v. Samango,* 450 F.Supp. 1097, 1102 (D.Haw.1978); *United States v. Provenzano*, 440 F.Supp. 561, 564 (S.D.N.Y. 1977); *United States v. DiGrazia*, 213 F.Supp. 232 (N.D.Ill.1963); see *United States v. Dionisio,* 410 U.S. 1, 16-17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). This guarantee is important to a

person under a federal criminal investigation because the purpose of the grand jury is "to provide a fair method for instituting criminal proceedings," *Costello v.United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), to serve "as a protector of citizens against arbitrary and oppressive governmental action," *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), and to assure the "protect[ion] of citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). Therefore, these purposes make it necessary that the grand jury be an investigating body "acting independently of either prosecuting attorney or judge," *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); that it be "independent and informed," *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962); and that it perform its mission, which is "to clear the innocent, no less than to bring to trial those who may be guilty." *United States v. Dionisio,* 410 U.S. at 16-17, 93 S.Ct. at 773.

"A prosecutor is vested with large discretion as to matters being submitted to a grand jury," and even though that "discretion is not subject to the control of the district court[,]" *United States v. Segelman*, 86 F.Supp. 114, 126 (1949), he is under a legal and ethical obligation to present exculpatory evidence when it exists: otherwise the grand jury cannot protect citizens from malicious prosecutions if it is not given information that is material to its determination. *See United States v. DeMarco,* 401 F.Supp. 505, 513 (C.D.Cal.1975), *aff'd,* 550 F.2d 1224 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.C.t 105, 54 L.Ed.2d 85 (1977); ABA *Standards, The Prosecution Function* § 3.6(b). Thus, when a prosecutor refuses to present exculpatory evidence, he, in effect, destroys the existence of an independent and informed grand jury. As the Supreme Court has already said, the constitutional guarantee that no person shall be held to answer for a

crime, unless on the presentment or indictment of a grand jury, "presupposes an investigative body acting independently of either the prosecuting attorney or the judge." *United States v. Dionisio,* 410 U.S. 1, 16, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), quoting *Stirone v. U.S.*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1973). When the government withholds exculpatory evidence from the grand jury it can irrevocably taint the entire indictment warranting dismissal. *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610, 618 (1977).

Given the gravity of grand jury independence, Justice Sutherland's explanation of why such misconduct by the government is intolerable warrants repetition:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger* v. *United States*, 295 U.S. 78, 88 (1935). The Third Circuit has iterated a similar policy concern:

> The prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants as well. For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment *will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo*. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

(Emphasis added) *United States* v. *Serubo*, 604 F. 2d 807, 817 (3rd Cir.1979), but see *U.S. v. Ashland Oil*, 705 F. Supp. 270 (W.D.Pa. 1979).

The palliative for these concerns, as the Supreme Court wrote in *Wood* v. *Georgia*, is that the grand jury must be both "independent" and "informed:"

> Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

370 U. S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

Unrestrained prosecutorial misconduct in grand jury proceedings "could so subvert the integrity of the grand jury process as to justify judicial intervention." Cf. *Franks* v. *Delaware*, 438 U. S. 154, 164-171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)(discussing analogous considerations in holding that a search warrant affidavit may be challenged when supported by deliberately false police statements).

Even the Justice Department's manual dictates the solemnity with which the government must proceed when presenting a case to the grand jury:

> When a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence which directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.

U. S. Dept. of Justice, *United States Attorneys' Manual* ¶ 9-11.233, p. 88 (1988).

The government was aware of the DOJ reports to which the Treasury had contributed myriad information concerning alleged illegal use of debit cards when it presented its case to the grand jury. It, therefore, labored under a conflict of interest.

This Circuit has steadfastly upheld due process rights against illegal government conduct. *See e.g., United States v. Remington*, 208 F. 2d 567, 569 (2nd Cir.1953). Amici ask that it be

remembered that "[t]he very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212 (1960), at 218. In this matter, it is the government that violated the rights of VMI and, vicariously, those legitimate parties with whom VMI did business. It is the opinion of the amici that, had the grand jury been presented with the exculpatory information mentioned, it would not have indicted VMI. The court, and only the court, can remedy this wrong by dismissing the Indictment against VMI.

THE GOVERNMENT PERPETRATED INVIDIOUS PROSECUTION OF VMI WHILE DEPRIVING VMI OF DUE PROCESS OF LAW

Under the due process clauses of the Fifth and Fourteenth Amendments, parties and the public are entitled to tribunals free of personal bias. *In re Murchison*, 349 U.S. 133, 136 (1955), *see also Chew v. Dietrich*, 143 F.3d 24, 28 n. 4 (2d Cir.)(observing that the due process clauses of the Fifth and Fourteenth Amendments create equivalent requirements for most purposes), *cert. denied*, 525 U.S. 948 (1998).

The requirement that tribunals be free of personal bias is applicable to administrative agencies in much the same way as it is applicable to courts. "It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes. *Tumey* v. *Ohio*, 273 U.S. 510 (1927). Moreover, *Ward* v. *Village of Monroeville*, 409 U.S. 57 (1972), indicates that the financial stake need not be as direct or positive as it appeared in *Tumey*. It has also come to be the prevailing view that '[m]ost of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators.' K. Davis, *Administrative Law Text* § 12.04, p. 250 (1972),…." *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). Although the grand jury was not an administrative agency, it labored under a

veil of ignorance that could only be pierced with information from Departments of Treasury and Justice: therefore, those agencies had a duty of candor to the grand jury, the defendant, and vicariously the amici. The government breached this duty when it failed to present the exculpatory evidence set forth herein to the grand jury.

The Indictment against VMI should be dismissed because the government has a substantial pecuniary interest in these legal proceedings against VMI. Preconceived opinions on the part of, and designed to benefit, the DOJ, the Treasury, and MasterCard® Worldwide, are not valid reasons for bringing criminal charges against VMI. The court described basic due process requirements in *Wall et al. v. American Optometric Association, Inc. et al*., as follows:

> "It is one of the mainstays of our system of laws that a state cannot affect a person's personal or property rights except after a hearing before a fair and impartial tribunal. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972). *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). A fair and impartial tribunal requires at least that the trier of fact be disinterested. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and that he also be free from any form of bias or predisposition regarding the outcome of the case, *Pillsbury Co. v. FTC*, 354 F.2d 952 (5th Cir. 1966); *N.L.R.B. v. Phelps*, 136 F.2d 562 (5th Cir. 1943). Not only must the procedures be fair, 'the very appearance of complete fairness' must also be present. *Amos Treat & Co. v. SEC*, 113 U.S.App.D.C. 100, 306 F.2d 260, 267 (1962). These principles apply not only to trials, but equally, if not more so, to administrative proceedings. *Ohio Bell Telephone Company v. Public Utilities Com'n.*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); *N.L.R.B. v. Phelps*, *supra*, Jaffe and Nathanson, *Administrative Law*, 3rd Ed. (1968), 955 et seq."

*Wall et al. v. American Optometric Association, Inc. et al.*, 379 F.Supp. 175, 188 (N.D.Ga. 1974).

The fundamental requirement of due process of law is the opportunity to be heard. *Louisville & Nashville R.R. Co.* v. *Schmidt*, 177 U.S. 230, 236; *Simon* v. *Craft*, 182 U.S. 427, 436. Pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments, neither the

states nor the federal government may deprive an individual of property or liberty without due process. *See Local 342 v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994).

The Due Process Clause does not demand that the government provide the same kind of procedural protections for every deprivation of a property or liberty interest.  *See Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.")(internal quotation marks omitted, alteration in original).  At a minimum, due process requires that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

> The key inquiry in evaluating whether the government provides due process is whether the class of persons affected are given notice and provided with an opportunity to contest the relevant determination "at a meaningful time and in a meaningful manner," see *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

*Weinstein v. Albright*, 261 F.3d 127 (2nd Cir. 2001).

Freedom of commercial enterprise is one of the basic, fundamental rights protected within the "liberty" concept of both the Fifth and fourteenth Amendments. *Allgeyer v. Louisiana,* 165 U.S. 578 (1897); *Coppage v. Kansas,* 236 U.S. 1 (1915)(Overruled on other grounds, *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177 (1941)).  In a landmark case the Supreme Court stated that, "The guarantee of due process . . . demands only that the law shall not be unreasonable, arbitrary or capricious, and that the **means selected** shall have a real and substantial relation to the object sought to be attained." (Emphasis added) *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78

L.Ed. 940 (1934). It is, therefore, the contention of Select Agents that it is entitled to due process before the legal, free enterprise activities in which it was engaged are curtailed as a result of the selective prosecution of VMI.

As previously stated, it is the prosecutor who decides how the government will proceed against a suspect. Given the means selected in the VMI case, the intention was to cause the demise of VMI—for the benefit of the DOJ, the Treasury, as well as MasterCard® and/or Comerica Bank. Equal protection of the laws bars government from, in regulating private business, exposing entrepreneurs to unreasonable, invidious, or discriminatory prosecution. The United States Supreme Court has said, "There is a point beyond which the State cannot go without violating the Equal Protection Clause. *The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary*." (Emphasis added). *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522 (1959). Where the same types of businesses are concerned, the government cannot set a different policy for one company than for another. The Equal Protection Clause prevents the government from classifying one business engaged in a particular enterprise differently than other businesses engaged in the same enterprise. "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the laws." *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 573, 30 S.Ct 563, 54 L.Ed. 883 (1910). "[I]t is only 'invidious discrimination' which offends the Constitution." *Ferguson v. Skrupa,* 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

The violation complained of herein involves the DOJ's policy as published in its Reports [see Appendix Exhibits C-6, C7-1, C7-2, and C-8] regarding how debit cards in general should

be perceived in the marketplace and how debit card marketing companies should be treated as a business by the DOJ. "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). That the DOJ would prosecute VMI and not all similarly situated debit card companies is an unjust administration of policy prohibited by *Yick Wo*.

THE GOVERNMENT IS PROCEEDING WITH UNCLEAN HANDS

Select Agents alleges that the government conducted Indictment proceedings before the grand jury and is now proceeding, with unclean hands. It withheld material, exculpatory information from the grand jury and the court: information regarding the DOJ's castigation of all debit cards in its publications and information that the DOJ knew about the Treasury's issuing its own debit card which has come to light in this case via the court's gracious permission for Select Agents to submit its Brief of *Amicus Curiae*.

> Whosoever would seek admission into a court of equity must come with clean hands; that such a court will never interfere in opposition to conscience or good faith; and again, and in intimate connection with the principles just stated, that it will never be called into activity to remedy the consequences of laches or neglect, or the want of reasonable diligence. Whenever, therefore, a competent remedy or defence shall have existed at law, the party who may have neglected to use it will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice. The effect of these principles upon the statements of the complainant is obvious upon the slightest inspection. The complainant alleges, that the obligation to which he had voluntarily become a party was intentionally made in fraud of the law, and for this reason he prays to be relieved from its fulfilment. This prayer, too, is preferred to a court of conscience, to a court which touches nothing that is impure. The condign and appropriate answer to

> such a prayer from such a tribunal is this; — that, however unworthy may have been the conduct of your opponent, you are confessedly in *pari delicto*; you cannot be admitted here to plead your own demerits; precisely, therefore, in the position in which you have placed yourself, in that position we must leave you.

*Creath's Administrator v. Sims*, 46 U.S. 192, 204 (1847).

## CONCLUSION

The government has unclean hands because of its failure to fully disclose to the grand jury and the court the Treasury's issuance of a competitor debit card.  This is a manifest perpetration of fraud and has infected the subsequent proceedings with a taint that deprives defendant VMI of due process of law and prevents it from receiving a fair trial.  This taint can only be remedied by dismissal of the Indictment against VMI. Withholding of such exculpatory information from the grand jury creates suspicion that, had the grand jury been made aware of such information, they would not have indicted VMI.  For this reason, Select Agents urges the court to use its power and dismiss the indictment against defendant VMI.

WHEREFORE, PREMISES CONSIDERED, Select Agents prays that the court dismiss the Indictment against VMI, and for other and further relief that is just and proper.

DATED this the 5th day of August, 2010.

    Respectfully submitted,

    ___/s/ Norman A. Pattis_____
    Norman Pattis
    Federal Bar No. ct13120
    PATTIS & SMITH, LLC
    649 Amity Road, P.O. Box 280
    Bethany, CT 06524
    203-393-3017
    normpattis@gmail.com

